## DAKOTA CENTRAL TELEPHONE CO. v. CITY OF HURON.

(Circuit Court, D. South Dakota. November 3, 1908.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHTS IN USE OF STREETS—CONSENT OF MUNICIPALITY.

Rev. Civ. Code S. D. § 554 (Acts 1885, p. 208, c. 141, § 3), provides that "there is hereby granted to the owners of any telegraph or telephone lines operated in the state the right of way over lands and real property belonging to the state and the right to use public grounds, streets, alleys and highways in this state subject to the control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across and the place the poles to support the wires are located." Const. S. D. art. 10, § 3 provides that "no * * * telephone line shall be constructed within the limits of any village, town or city without the consent of its local authorities." A city ordinance provided that "the right is hereby granted to * * * his successors or assigns to place, construct and maintain upon and through the streets and alleys" of the city a telephone line, "subject however to all conditions and stipulations herein set forth." It required the grantee to accept the ordinance in writing and to construct the line within four months, which he did. It also provided: "Sec. 10. The term of this franchise shall be for ten years from and after its passage." The grantee operated the telephone system for six years, and then conveyed the same to complainant, which was a corporation organized under the laws of the state and by its charter authorized to purchase, lease, construct, and operate telephone lines and exchanges. *Held*, that by the ordinance, and its acquiescence in the construction of the line by its grantee, the city consented to such construction within the meaning of the constitutional provision; that the right of complainant to maintain and operate the line was not derived from the city but from the state, and was not affected by the limitation in section 10 of the ordinance.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*

Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telegraph & Telephone Co. v. City of Richmond, 44 C. C. A. 155.]

2. TELEGRAPHS AND TELEPHONES (§ 7*)—"FRANCHISE."

The consent of a city granted by ordinance to a person and his successors and assigns to construct a telephone system within its limits is

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not a franchise, although such consent is necessary under the Constitution and statutes of the state.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 5; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2941; vol. 8, p. 7666.]

## In Equity.   On final hearing.

This cause has been submitted upon bill, cross-bill, answers thereto, and a stipulation of facts   From the stipulation the following material facts appear:

The Dakota Central Telephone Company is a corporation duly incorporated under the laws of the state of South Dakota on August 30, 1904, with power to purchase, lease, construct, and operate telephone lines and exchanges.   The defendant is a municipal corporation of South Dakota.   On January 28, 1898, at the request of one J. L. W. Zeitlow, the city council of the defendant duly passed the following ordinance:

"An ordinance granting to J. L. W. Zeitlow the right to erect and maintain poles and wires on the streets and public ways of the city, upon the conditions herein provided.

"The city council of the city of Huron do ordain as follows:

"Section 1. Be it ordained by the city council of the city of Huron, South Dakota, that the right is hereby granted to J. L. W. Zeitlow, his successors or assigns, to place, construct and maintain upon and through the streets and alleys and public grounds of said city all poles, posts and other supports, and all wires and fixtures proper and necessary for supplying to the citizens of said city and public communication by telephone and other improved appliances, subject, however, to all conditions and stipulations herein set forth.

"Sec. 2. All poles, supports or wires placed shall be so done under the supervision of the street committee and the same shall be so placed and the wires therein secured and kept at such elevation as to reasonably avoid danger to persons and adjoining property.   No part of such poles, supports or wires shall interfere with the proper use of said streets for other lawful purposes; nor be so placed as to make cutting of shade trees necessary; and such poles shall be reasonably straight and maintained in good repair.

"Sec. 3. Said poles shall not be set so as to interfere with the construction, placing or proper maintenance of any water pipe, gas pipe, drain or sewer that has been or may be authorized by said city or in case of bringing to grade of curblines of any street or alley whereupon such poles may have been erected, then the said J. L. W. Zeitlow or his assigns shall change such poles and reset same to conform to such change.

"Sec. 4. The city council hereby reserves the right to grant a like right of way for poles or wires or fixtures of any other telephone, telegraph, electric light or electric street railway company or individuals when the said city so desires, provided the same shall not interfere with the full and proper use and right hereby granted.

"Sec. 5. In consideration of the foregoing, the said J. L. W. Zeitlow, if he shall accept this ordinance, is to allow the city of Huron to place upon its poles, free of charge, such wires as may be necessary for the purpose of maintaining a fire alarm system.

"Sec. 6. This ordinance shall be published according to law and shall take effect only on filing in the office of the city clerk of said city, within ten days after the first publication thereof, of a written acceptance of the terms of this ordinance by said J. L. W. Zeitlow.

"Sec. 7. That said J. L. W. Zeitlow, his successors or assigns, is to furnish for the city's business, and without charge and with exchange service for both local and long distance telephone, so long as the exchange is maintained hereunder, one telephone at city hall; also such other telephones for the city's business as the city council may hereafter by resolution require at 25 per cent. discount from regular exchange rates.

"Sec. 8. Rates for telephone service shall not exceed $2.50 per month for business houses, hotels, offices, etc., and $1.00 per month for private residences.

* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Sec. 9. Work shall be commenced under this franchise within forty-five days from its passage and shall be completed and in operation within four months or this ordinance becomes null and void.

"Sec. 10. The term of this franchise shall be for ten years from and after its passage.

"Passed at a regular session of the city council, March 11, 1898."

On April 8, 1898, said Zeitlow filed with the city clerk of defendant the following acceptance of said ordinance:

"To the Mayor and Common Council of the City of Huron, South Dakota.

"Gentlemen: I hereby accept the ordinance granted by your honorable body granting me permission to erect poles and fixtures and to string wires on any of the streets, alleys and public grounds of your city for the purpose of establishing and maintaining a telephone exchange within the City of Huron, South Dakota.    Respectfully,                    J. L. W. Zeitlow."

Zeitlow duly constructed and completed the telephone lines and system mentioned in said ordinance, and operated the same until the year 1904, when the complainant purchased the same and has ever since owned and operated said telephone system. The complainant has invested in said telephone system the sum of $25,000, and furnishes telephone service to about 820 subscribers therewith.   On July 14, 1907, the city council of defendant passed the following resolution, and caused a copy of the same to be served upon complainant:

"Whereas it is the policy of the city of Huron not to grant a franchise to any public service corporation which is not controlled by citizens of the city of Huron; and whereas the franchise of the present telephone company controlled by J. L. W. Zeitlow expires on the 11th day of March, 1908.

"Be it resolved: That no franchise for the purpose of operating a telephone service within the city of Huron will be granted to any company which is not controlled by citizens of Huron;

"Be it further resolved: That a copy of this resolution be at once sent by registered mail to Mr. J. L. W. Zeitlow by the city clerk."

On January 24, 1908, the city council of the city of Huron passed the following resolution:

"The city council of the city of Huron does hereby resolve that the franchise now held by J. L. W. Zeitlow to maintain telephone system in the city of Huron, which expires on the 11th day of March, 1908, will not be renewed.

"It is further resolved that the Dakota Central Telephone Company now operating in the city of Huron is hereby required to vacate the streets and alleys of the city of Huron at the expiration of the said franchise, and to remove their poles and wires and other apparatus therefrom.   And the city clerk of the city of Huron is hereby directed to notify the said Dakota Central Telephone Company and Mr. J. L. W. Zeitlow of the action of this council, passed at a regular meeting of the city council of the city of Huron on the 24th day of January, 1908"—

and caused a copy thereof to be served upon complainant.   The defendant through its officers threaten to remove by force the poles and lines of complainant's telephone system from the streets of said defendant.   On this record complainant prays that the defendant be perpetually enjoined from tearing down and removing its telephone poles and lines as threatened, and the defendant prays by its cross-bill that the complainant be compelled within a reasonable time to remove said poles and lines from its streets for the reason only that the time limit fixed in the ordinance of January 28, 1898, has expired, and that the said poles and lines now constitute a public nuisance.

T. H. Null and W. A. Lynch, for complainant.
A. B. Fairbank and A. K. Gardner, for defendant.

CARLAND, District Judge (after stating the facts as above).   The following provisions of statutory law relate to the questions raised on this record:

"To provide for the lighting of streets and public grounds, the laying down of gas pipes and erection of lamp posts, lines for conveying electric light and telegraph and telephone lines and to regulate the distribution, use and sale

of gas and other illuminating fluids." Paragraph 11 of section 7 of the charter of the city of Huron.

"No street passenger, railway or telegraph or telephone line shall be constructed within the limits of any village, town or city without the consent of its local authorities." Article 10, § 3, Const. S. D.

"There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right of way over lands and real property belonging to the state, and the right to use public grounds, streets, alleys and highways, in this state subject to the control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located. The right of way over real property granted in this act may be acquired in the same manner and by like proceedings as provided for railroad corporations." Section 554, Rev. Civ. Code (Acts S. D. 1885, p. 208, c. 141, § 3).

The Supreme Court of South Dakota, in Missouri River Telephone Co. v. City of Mitchell, 116 N. W. 69, in speaking of said article 10 of the Constitution, and said section 554 of the Revised Civil Code, used the following language:

"Adding to the statute the constitutional provision regarding consent, the law applicable to the issue here involved is expressed in the following language: 'There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right of way over lands and real property belonging to this state, and the right to use public grounds, streets, alleys and highways, in this state, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located. The right of way over real property granted in this act may be acquired in the same manner and by like proceedings as provided for railroad corporations.' Provided, however, that no telephone line shall be constructed within the limits of any city. without the consent of its local authorities. Rev. Civ. Code, § 554; Const. S. D. art. 10, § 3."

The same court, in the same case, at page 70 of 116 N. W., speaking of the manner in which a municipal corporation may give the consent required by the Constitution, used the following language:

"No particular mode of manifesting municipal consent to the construction of a telephone line is prescribed by the Constitution or statutes. So far as the Constitution is concerned, such consent may be either express or implied."

Taking the facts and the law as stated, two questions arise for determination upon this record: First. Did the defendant ever give its consent to the construction of the telephone system now owned and operated by complainant in said city of Huron? Second. If such consent was given, was such consent in any way limited by section 10 of the ordinance of March 11, 1898, which is as follows:

"The term of this franchise shall be for ten years from and after its passage."

In view of the holding of the Supreme Court of South Dakota in the case of Missouri River Telephone Co. v. Mitchell, supra, that the consent required by the Constitution may be express or implied, we may look to all the acts of the parties to the ordinance of March 11, 1898, to determine whether or not the consent required by the Constitution has been given. We need not dwell long upon this question, for it conclusively appears that Zeitlow did construct the telephone system provided for by said ordinance with the knowledge and acquiescence of the city of Huron; and this fact, taken in connection with the ordinance itself, clearly establishes the fact that the defend-

ant did consent to the construction of the telephone system constructed by Zeitlow. There are no express terms in the ordinance granting consent, but it necessarily results that the city did consent by the facts stated in the record.

It is not necessary in this case to consider the question as to whether the city of Huron had any authority in its charter to grant a franchise to Zeitlow, empowering him to operate a telephone system in the city of Huron and charge tolls therefor, as whatever franchise Zeitlow obtained by the ordinance of March 11, 1898, has terminated by the term of the ordinance itself.

But for the purpose of arriving at the intention of the parties to the ordinance of March 11, 1898, and for the purpose of ascertaining the sense in which they used the words therein to express their intention, we may consider the fact that the parties to the ordinance beyond question thought that the city had the right to grant Zeitlow the franchise to operate a telephone system within the city of Huron. It is also necessary for the purpose above mentioned to consider the fact that all the franchise Zeitlow had to operate a telephone system in the city of Huron came through the ordinance of March 11, 1898. The laws of South Dakota gave Zeitlow no franchise to operate a telephone system within the city of Huron, and he was obliged to get the franchise from the state or from the city; and both, acting under the impression that the city could grant the franchise, entered into the contract composed of the ordinance of March 11, 1898, and its acceptance of April 1, 1898.

In view of what has been said, it is plain to this court that section 10 of the ordinance of March 11, 1898, never in any way limited the consent given by the city for the construction of the telephone system by Zeitlow. The section referred to by its express terms limits its operation to the franchise granted by the ordinance. It involves a contradiction of terms to say that an ordinance which provided that work should be commenced under the ordinance within 45 days from the passage of the same, and should be completed and in operation within 4 months, was an ordinance or express consent conditioned that Zeitlow should construct the telephone system within 10 years as provided by section 10 of the ordinance. The Constitution of the state requires consent to the construction, and not to the maintenance and operation, of telephone systems, and this language, we must presume, was used with reference to the power of the state to grant franchises for the purpose of operating and maintaining telephone systems. The provision in the Constitution was no doubt incorporated therein for the purpose of enabling municipalities to impose proper conditions within the limits of the police power before the telephone company could place its poles and wires in their streets. The case presented is this: Complainant, by its charter granted in 1904, has the power to purchase, lease, construct, and operate telephone lines and exchanges. It is the owner of the telephone system constructed by Zeitlow with the consent of the city of Huron, and which is now being operated by complainant. It, therefore, is not obliged to look to the ordinance of March 11, 1898, for any authority whatever, but may stand

upon its charter powers and its ownership of the system constructed by Zeitlow. If Zeitlow had remained the owner of the system, he would be obliged to look to the ordinance of March 11, 1898, for his franchise—that is, his right to operate the system within the city of Huron and charge tolls therefor—but it is not so with the complainant, for it has received express power so to do by its charter granted in 1904. In connection with the word "franchise" as used in section 10 of the ordinance, it may be well to consider what a franchise is; and, when we have found out what a franchise is, we find that it bears no resemblance to the mere consent of a city to the construction of a telephone system within its limits which would be a mere license or easement.

"A franchise is a right or privilege granted by the sovereignty to one or more parties to do some act or acts which they could not do without this grant from the sovereign power." Bank of Augusta v. Earle, 13 Pet. 595, 10 L. Ed. 274.

In McPhee and McGinnity Co. v. Union Pacific Railway Co., 158 Fed. 10, the Court of Appeals of the Eighth Circuit says:

"A right or privilege which is essential to the performance of the general function or purpose of the grantee, and which is and can be granted by the sovereignty alone, such as the right or privilege of a corporation to operate an ordinary or commercial railroad, a street railroad, city waterworks or gasworks, and to collect tolls therefor, is a franchise. New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 659, 6 Sup. Ct. 252, 29 L. Ed. 516; Walla Walla Water Co. v. Walla Walla, 172 U. S. 1, 9, 19 Sup. Ct. 77, 43 L. Ed. 341; Denver v. City Cable Co., 22 Colo. 565, 45 Pac. 439; Donahue v. Morgan, 24 Colo. 389, 390, 400, 50 Pac. 1038; Thomas v. Grand Junction, 13 Colo. App. 80, 81, 56 Pac. 665; City of Denver v. Denver Union Water Co. (Colo.) 91 Pac. 918, 919."

It therefore conclusively appears to the satisfaction of this court that the word "franchise" in section 10 of the ordinance of March 11, 1898, was properly used, and referred only to the right of Zeitlow to operate and maintain a telephone system in the city of Huron and charge tolls therefor, and did not refer to the consent of the city to construct a system which had to be constructed before it could be operated or maintained, and for this reason this case is clearly distinguishable from Southern Bell Telephone Co. v. City of Richmond, 103 Fed. 31, 44 C. C. A. 147, but does fall within the principles enunciated in the case of Northwestern Telephone Exchange Co. v. City of Minneapolis et al., 81 Minn. 140, 86 N. W. 69, 53 L. R. A. 175, and Abbott et al. v. City of Duluth (C. C.) 104 Fed. 833.

It results from what has been stated that the complainant is entitled to the relief prayed for. The court not only believes that the legal propositions herein stated are sound, but also is constrained to believe that the result reached is in accord with equity and good conscience. On the one hand, the complainant is threatened with a destruction of valuable property in which it has invested its money; and, on the other hand, the city of Huron is seeking to accomplish such destruction, not that it may make a better contract with any other person, but that some citizen of Huron may construct a telephone system within its limits, to the exclusion of all others.